# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39229**

_____

**UNITED STATES**
*Appellee*

**v.**

**Nicholas V. LINTON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 12 October 2018

_____

*Military Judge:* Tiffany M. Wagner.

*Approved sentence:* Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 10 January 2017 by GCM convened at Vandenberg Air Force Base, California.

*For Appellant:* Major Patrick A. Clary, USAF; Captain Dustin J. Weisman, USAF; Tami L. Mitchell, Esquire; David P. Sheldon, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire; Justin P. Kenyon, Legal Extern.[1]

Before HARDING, HUYGEN, and POSCH, *Appellate Military Judges.*

Judge HUYGEN delivered the opinion of the court, in which Judge POSCH joined. Senior Judge HARDING filed a separate opinion concurring in the result.

_____

[1] Mr. Kenyon was a law student extern with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

---

HUYGEN, Judge:

Appellant, pursuant to a pretrial agreement (PTA), pleaded and was found guilty of one specification of possession of child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, by a military judge sitting as a general court-martial. Pursuant to the PTA, Appellant waived all waivable motions except a motion to suppress the evidence from the search and seizure of his computers, which preserved the issue for appellate review. Appellant pleaded not guilty to one specification of distribution of child pornography, in violation of Article 134, UCMJ, and, after litigation, the military judge found Appellant not guilty of child pornography distribution. The military judge sentenced Appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant raises on appeal eight assignments of error: (1) whether the military judge abused her discretion by denying Appellant's motion to suppress evidence searched and seized in violation of his Fourth Amendment[2] rights; (2) whether the "patently unreasonable" stipulation of fact with attached victim impact statements was an unlawful condition of the PTA; (3) whether there is a substantial basis in law, fact, or both to question the providence of Appellant's guilty plea because of the PTA, stipulation of fact, and attached victim impact statements; (4) whether the military judge abused her discretion by allowing testimony about the "Blue Pillow" victim as aggravation evidence; (5) whether Appellant is entitled to credit for violation of Article 13, UCMJ, 10 U.S.C. § 813, Article 55, UCMJ, 10 U.S.C. § 855, and the Eighth Amendment[3] for being required to stipulate to victim impact statements as fact; (6) whether trial defense counsel were ineffective for failing to

---

[2] U.S. CONST. amend. IV.

[3] U.S. CONST. amend. VIII.

request a *Franks v. Delaware*[4] hearing to challenge affidavits involving the search and seizure of Appellant's computers and for advising Appellant to enter into a "patently unreasonable" stipulation of fact with attached victim impact statements; (7) whether Appellant's sentence, including confinement for five years and a dishonorable discharge, was inappropriately severe; and (8) whether the conditions of Appellant's post-trial confinement violate the Eighth Amendment and Article 55, UCMJ.[5] We also reviewed the issue of appellate delay. We find prejudicial error resulting from the admission of the victim impact statements attached to the stipulation of fact, reassess the sentence, and otherwise affirm the findings and the sentence as reassessed.

## I. BACKGROUND

Appellant pleaded guilty to possession of child pornography from November 2012 to November 2015. He obtained it by searching on the Internet and downloading it using peer-to-peer (P2P) software, which allows one user or peer to download data directly from another peer's computer without an intermediate step of the data residing on a server accessible by both peers. Appellant admitted to possessing 1,323 pictures and 322 videos of child pornography on two computers.

## II. DISCUSSION

Appellant submitted eight assignments of error, six of which involve the search and seizure of the computers he used to store the child pornography he possessed, the victim impact statements attached to the stipulation of fact he signed pursuant to the PTA, or both. We separately address the search and seizure, the victim impact statements, the remaining assignments of error of the evidence in aggravation and the conditions of post-trial confinement, and appellate delay below.

### A. Search and Seizure

#### 1. Additional Background

Investigator JE, an experienced investigator with the Santa Barbara (California) District Attorney's Office Bureau of Investigations, was alerted that

---

[4] 438 U.S. 154 (1978) (holding that a criminal defendant may be entitled to a hearing to challenge the veracity of an affidavit used to issue a search warrant after the warrant has been executed). *See* Mil. R. Evid. 311(d)(4)(B).

[5] Appellant raises the eighth issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

someone using an Internet Protocol (IP) address in Santa Barbara County had downloaded potential child pornography. He established a P2P connection with the user of the IP address and downloaded three files, which he confirmed contained child pornography as they depicted children engaged in sexual acts. He obtained a warrant for user information from the company that owned the IP address. The company referred him to the Internet Service Provider (ISP) for the IP address, and the ISP identified Vandenberg Air Force Base (AFB), California, as the location of the user associated with the address. Investigator JE then turned over the investigation to the Air Force Office of Special Investigations (AFOSI).

Special Agent DK, a new AFOSI agent, was assigned to lead the investigation, which he worked in conjunction with Investigator JE. The ISP forwarded to Special Agent DK the information that identified Appellant as the user of the IP address. Special Agent DK coordinated with a lawyer in the wing legal office at Vandenberg AFB and scheduled a face-to-face meeting with Colonel TS, a military magistrate. At the end of the meeting, which occurred on 3 November 2015, Colonel TS determined there existed probable cause to conduct a search and seizure, specifically, a search of Appellant and his on-base dormitory room and the seizure of his media devices, including his computers.

The search of Appellant's room occurred on 4 November 2015. During the search, Special Agent DK clicked to open the P2P software's "currently downloading" window on one of Appellant's computers, and Investigator JE ran a program on the computers to search for evidence of child pornography.

Pursuant to the PTA, Appellant waived all waivable motions except for the motion to suppress the evidence from the search and seizure of his computers. Thus, his guilty plea was conditioned on the search and seizure surviving appellate scrutiny.[6]

**2. Law**

The Fourth Amendment provides as follows:

---

[6] *See* Rule for Courts-Martial (R.C.M.) 910(a)(2) (describing the process for a conditional guilty plea); *see also United States v. Monroe*, 50 M.J. 550 (A.F. Ct. Crim. App. 1999); Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 8.3 (6 Jun. 2013, as amended by AFGM 2016—01, 3 Aug. 2016). While the "letter" of R.C.M. 910(a)(2) was not completely followed in Appellant's case, we find there was sufficient adherence to the "spirit" of the rule to conclude the parties intended and the military judge accepted a conditional guilty plea by Appellant.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. CONST. amend. IV.

Searches conducted pursuant either to a warrant or to an authorization based on probable cause are presumed reasonable. *United States v. Hoffmann*, 75 M.J. 120, 123–24 (C.A.A.F. 2016) (citation omitted).

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Lutcza*, 76 M.J. 698, 701 (A.F. Ct. Crim. App. 2017), *rev. denied*, 76 M.J. 402 (C.A.A.F. 2017) (citing *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008)). The military judge's findings of fact are reviewed for clear error, while the conclusions of law are reviewed de novo. *Id.* (citing *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015)). "[A] military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *Id.* (quoting *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004)). When reviewing a motion to suppress, we consider the evidence in the light most favorable to the prevailing party. *Id.*

### 3. Analysis

#### a. Lawful Search and Seizure

We find no error—much less clear error—in the military judge's findings of fact and adopt them as our own. Having reviewed de novo the judge's conclusions of law, not only do we find no abuse of discretion, but we specifically concur with the judge's determination that the military magistrate's search authorization was based on probable cause. While we echo the judge's sentiment "that neither [Special Agent DK's] affidavit nor the search authorization is a model of clarity," we agree that both were sufficient to conclude the search and seizure of Appellant's computers was lawful.

We make three additional determinations about the search and seizure relevant to our conclusion that it was lawful. First, we do not share Appellant's concern that the computers' hard drives were searched when the computers, not their internal drives, were specified in the written search authorization, or Air Force Form 1176, *Authority to Search and Seize*, (Jun. 1988) [AF IMT 1176]. Colonel TS was informed that Special Agent DK was investigating Appellant for the offense of possession of child pornography and seeking authorization to search and seize Appellant's media devices. The only logical conclusion for the military magistrate—and then the military judge and

now us—was that the computers were going to be not only seized, but also then searched for evidence of the offense being investigated. Such evidence was not going to be the computer itself; it was going to be the data stored on the computer.

Second, we find differently than Appellant contends or the military judge found; we find the search of Appellant's computers was timely. Appellant contends that the search of the computers was not timely because the AF IMT 1176 allotted "three days from 04 November 2015" and the forensic analysis was not requested until 17 November 2015, not started until 30 November 2015, not completed until 18 December 2015, and not reported until 6 March 2016. The military judge agreed the search of the computers was not timely, but found the time was not unreasonable. *See United States v. Cote*, 72 M.J. 41, 44 (C.A.A.F. 2013) (citation omitted) (noting that "courts have considered seizure of electronic materials and later off-site analysis and review of them to be a constitutionally reasonable 'necessity of the digital era.'"). Applying the balancing test of Mil. R. Evid. 311(a)(3),[7] the judge did not exclude the evidence from the search.

Although we also conclude the evidence was admissible, we find the search was timely. Appellant would have us strictly apply the language of the AF IMT 1176, but ignore its specific words. The form reads, "No search conducted pursuant to the authority herein granted shall be *initiated* later than three days from 04 November 2015 . . . ." (Emphasis added). The search of Appellant's room occurred on 4 November 2015, which means it was initiated no later than 7 November 2015, and thus was timely. Even considering the specific search of the computers, we find the search to have been initiated on 4 November 2015 when Special Agent DK clicked to open the P2P software's "currently downloading" window and Investigator JE ran a program on the computers to search for evidence of child pornography.

Third, while we agree with Appellant that the search documents omitted some information, we disagree that those omissions render the search unlawful. Appellant's argument that the search and seizure was unlawful rests on the documents involved, primarily Special Agent DK's affidavit and the AF IMT 1176. It overlooks Mil. R. Evid. 315, which allows a search authorization to be written or oral and a probable cause determination to be based on writ-

---

[7] "Evidence obtained as a result of an unlawful search or seizure . . . is inadmissible against the accused if: . . . exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system."

ten or oral statements communicated to the search authority. Mil. R. Evid. 315(b)(1), (f)(2). We acknowledge what Appellant points to: that Special Agent DK's affidavit did not include all of the information he communicated to Colonel TS during their in-person meeting on 3 November 2015 and that the AF IMT 1176 did not describe every aspect of the search and seizure Colonel TS authorized. However, the deficiencies in memorializing the oral statement to the search authority and the search authorization do not render unlawful the search and seizure of Appellant's computers, which was based on probable cause, reasonable, and lawful.

Having determined the search and seizure of Appellant's computers was lawful, we resolve Appellant's first assignment of error (AOE I) and conclude the military judge did not abuse her discretion in denying Appellant's motion to suppress the evidence from the search.

### b. Effective Assistance of Counsel

We next address Appellant's claim that his trial defense counsel were ineffective (AOE VI) insofar as they did not request a *Franks* hearing to challenge the affidavits of Investigator JE and Special Agent DK.[8] Investigator JE produced an affidavit to support the request for a warrant to obtain user information from the company that owned the IP address ultimately associated with Appellant and used by Appellant to download child pornography. Special Agent DK produced an affidavit to support the request for authority to search Appellant and his on-base dormitory room and seize his media devices, including his computers.

"The Sixth Amendment guarantees the right to effective assistance of counsel." U.S. CONST. amend. VI; *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (citation omitted), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984) (citation and footnote omitted).

We review allegations of ineffective of counsel de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citation omitted). We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

---

[8] Appellant also lists the affidavit of Special Agent AC but does not discuss it.

2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Id*. (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

It is true that Appellant's trial defense counsel did not request a *Franks* hearing to challenge the affidavits of Investigator JE and Special Agent DK. But not requesting such a hearing was not a failure by counsel and their performance did not fall below that ordinarily expected. Mil. R. Evid. 311(d)(4)(B)[9] incorporates the *Franks* decision in the procedure to challenge probable cause, specifically, for a false statement made to a search authority. Appellant's trial defense counsel, having reviewed the affidavits of Investigator JE and Special Agent DK and interviewed both affiants, had no reason to believe that either included in his affidavit "a false statement knowingly and intentionally or with reckless disregard for the truth. . . ." Mil. R. Evid. 311(d)(4)(B). Correspondingly, counsel would not have been able to make "a substantial preliminary showing" of such a false statement to be entitled to a *Franks* hearing. *Id*. Even if a hearing had occurred, the challenge of probable cause would have failed for the reasons explained above. Thus, we conclude Appellant's trial defense counsel were not ineffective insofar as they did not request a *Franks* hearing to challenge the affidavits of Investigator JE and Special Agent DK.

## B. Victim Impact Statements

### 1. Additional Background

In December 2016, after the August 2016 arraignment and motions hearing and October 2016 motions hearing and continuance, the Senior Trial Counsel (STC) who represented the Government at Appellant's trial provided to the Defense 58 pages of victim impact statements and indicated that the Government intended to offer all of the statements during Appellant's sentencing proceeding as evidence in aggravation. All victim names and any information that could identify the victim associated with each statement, such as the title of the child-pornography series, was redacted from the statements

---

[9] Mil. R. Evid. 311(d)(4)(B) was previously numbered and is cited in Appellant's brief as Mil. R. Evid. 311(g)(2).

provided to the Defense. The STC refused the Defense request to identify the victims and instead "provided contact information for law enforcement officers or attorneys assigned to the individual victims." When the Defense again requested information about the victims referenced in the statements, the STC refused the request.

On 30 December 2016, the Defense moved for relief and asked that the statements' authors be identified and produced for trial and that the statements be suppressed because it could not be determined if the statements were made by victims of Appellant's charged offenses. The Government did not make a written response to the motion and the military judge did not rule on it. On 6 January 2017, the parties completed a PTA in which Appellant agreed, *inter alia*, to enter into a reasonable stipulation of fact. On 7 January 2017, the parties signed the stipulation of fact, which was admitted as Prosecution Exhibit 1 at trial.

The stipulation of fact has two attachments. Attachment 1 is a DVD containing a "sampling" of the pictures and videos of child pornography that Appellant downloaded and stored on his two computers. The DVD has 25 pictures and 10 videos; the pictures are only numbered but the videos have file names. Attachment 2 is 37 pages of "victim impact statements" from an unknown number of child pornography victims and their family members. Paragraph 16 of the stipulation of fact explains Attachment 2 as follows:

> Ultimately, the images and videos possessed by the Accused were of children victimized between the approximate ages of four and fifteen years old in more than twenty states and ten foreign countries. Many of these children and their families wrote "victim impact statements," attached as "Attachment 2." These victim impact statements are admissible for the purpose of determining an appropriate sentence for the Accused.

The victims' names and identifying information constitute the only redactions from the victim impact statements in Attachment 2. As a result, the 37 pages include information other than victim impact, such as sentence recommendations for unlawful punishment. Notably, one "school-aged child" victim, when asked about the sentence she would "like a judge to order for someone caught sending, receiving or possessing sexually explicit pictures of you," handwrote her answer: "humped to de[a]th by a horse and make them get aids and die."

During the trial on 9–10 January 2017, the military judge reviewed the PTA and stipulation of fact with Appellant. Appellant acknowledged his understanding that, pursuant to the PTA, he was waiving all waivable motions, including the motion for relief regarding the redactions from the victim im-

pact statements attached to the stipulation of fact. However, the military judge did not review with Appellant paragraph 16 of the stipulation of fact and thus did not have Appellant articulate his understanding of the paragraph's meaning and effect.

When the Government presented its sentencing case, the Defense objected to the admission of evidence in aggravation under Rule for Courts-Martial (R.C.M.) 1001(b)(4), specifically, testimony from Mr. KP, a Government witness who in 2009 investigated the production of a child pornography series referred to as the "Blue Pillow" series. Appellant possessed one image of the "Blue Pillow" victim, and the image was included in Attachment 1 to the stipulation of fact. Overruling the objection, the military judge stated,

> I will also note that I understand that [Appellant] did not cause or actually create the child pornography [he possessed] or actually cause the specific harm to the victim, however, the crime that he has been convicted of, possession of child pornography, which included this victim in the images that he possessed, still is within the evidence as to how it meets the definition of being evidence in aggravation.

> And this Court understands that his actions of viewing, the possession of the child pornography is not the same as causing the actual abuse, however, I will allow this testimony, and if it goes beyond what this Court finds is admissible under R.C.M. 1001, I will stop trial counsel at that point . . . .

The judge made no similar statement regarding the victim impact statements in Attachment 2.

Mr. KP testified that the "Blue Pillow" victim was 12 years old at the time the series was produced and 21 at the time Appellant was tried. She had suffered psychological trauma, was still in counseling, the financial cost of which caused her mother's bankruptcy, and to date had received over 7,500 notifications of criminal investigations involving her images. Mr. KP then made the only identification of a victim in the statements attached to the stipulation of fact: page two of Attachment 2 was written by the mother of the "Blue Pillow" victim.

The STC began his sentencing argument with a lengthy quotation from the victim impact statement at page four of Attachment 2 but did not identify the victim or indicate whether her image was included in Attachment 1. The quotation ended with the STC reading to the female military judge,

> Imagine how you would feel if someone took your child, your sisters or even your photo and masturbated to it. Would it bother you to know that people you don't know are fantasizing

about you sexually? Especially as a child who is supposed to be protected and innocent.[10]

The Government recommended a sentence that included seven years of confinement; the Defense argued for three; the military judge decided on five.[11] After trial, the Defense requested clemency in the form of a bad-conduct discharge instead of a dishonorable discharge and three years of confinement instead of five. The convening authority approved the sentence as adjudged.

**2. Law**

During sentencing proceedings, evidence of impact on a victim of an offense of which an accused has been found guilty can be offered either by the Government as evidence in aggravation pursuant to R.C.M. 1001(b)(4)[12] or by the victim as "victim impact" pursuant to R.C.M. 1001A.[13] *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citation omitted). If the latter, the Military Rules of Evidence do not apply. *United States v. Hamilton*, 77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017), *rev. granted*, 77 M.J. 368 (C.A.A.F. 2018). Unlike R.C.M. 1001(b)(4), R.C.M. 1001A specifically allows a victim or victim's designee to make an unsworn statement, which may be oral, written, or both, and to do so without being subject to cross-examination. R.C.M. 1001A(e). "A victim's unsworn statement should not exceed what is permitted under R.C.M. 1001A(c) and may not include a recommendation of a specific sentence." R.C.M. 1001A, Discussion.

If victim impact is offered as evidence in aggravation pursuant to R.C.M. 1001(b)(4), the Military Rules of Evidence apply. *Hamilton*, 77 M.J. at 586.

---

[10] Because of format and punctuation, the trial transcript does not reflect that this was a continuation of the quotation from the victim impact statement at page four of Attachment 2. We presume that was obvious to the parties at trial as there was no objection to this otherwise clearly objectionable argument.

[11] Pursuant to the PTA, Appellant pleaded guilty only to possession of child pornography, not to distribution. The PTA set one confinement "cap" of 96 months, or eight years, and made no reference to a lower "cap" should Appellant be found guilty only of possession, which turned out to be the case.

[12] "Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused . . ." R.C.M. 1001(b)(4).

[13] "For the purposes of this rule, 'victim impact' includes any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).

Mil. R. Evid. 403 sets out a balancing test for the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Mil. R. Evid. 403.

The United States Court of Appeals for the Armed Forces has held that

> Evidence that otherwise would be inadmissible under the Military Rules of Evidence may sometimes be admitted at trial through a stipulation, if the parties expressly agree, if there is no overreaching on the part of the Government in obtaining the agreement, and if the military judge finds no reason to reject the stipulation "in the interest of justice."

*United States v. Clark*, 53 M.J. 280, 281–82 (C.A.A.F. 2000) (quoting *United States v. Glazier*, 26 M.J. 268, 270 (C.M.A. 1988)).

**3. Analysis**

Had all identifying information not been redacted from the victim impact statements that comprised Attachment 2 to the stipulation of fact and had the Government not refused to provide the information to the Defense, the statements may have been admissible, at least in part and through some process, whether by R.C.M. 1001(b)(4) or R.C.M. 1001A. That some of the statements contained information inadmissible under any rule, e.g., the sentence recommendations for unlawful punishment, did not necessarily mean that the statements could not be attached to the stipulation of fact, as even wholly inadmissible evidence may be admitted through a stipulation. *Clark*, 53 M.J. at 281–82. However, all identifying information was redacted from the victim impact statements, thereby making it impossible for anyone—Appellant, military judge, or convening authority—to determine whether any of the victims referenced in the statements were depicted in the child pornography possessed by Appellant or included in Attachment 1.[14] The redactions thus rendered the statements nearly irrelevant to Appellant's case. When the Government produced victim impact statements with all identifying information redacted and then refused the Defense's request to provide the information, the Government overreached.

---

[14] As previously explained, only one victim referenced in one statement was ever identified during Appellant's trial when Mr. KP identified the mother of the victim depicted in photograph "Number 16" of Attachment 1 as the author of page two of Attachment 2.

### *a. Attachment to Stipulation of Fact*

Applying the plain error analysis set out in *Clark*, we find that it was clear error for the military judge to admit the victim impact statements of Attachment 2. Pursuant to the PTA, Appellant stipulated, *inter alia*, to the "fact" that the statements were written by children depicted in the child pornography he possessed and their family members. Other than the Government's assertion, Appellant did not know that to be true because the Government withheld the identifying information that would have correlated the victims referenced in the statements to the victims depicted in the child pornography Appellant possessed. Furthermore, the military judge was well aware of the Government's withholding because of the Defense's motion for relief on the matter. While the military judge confirmed Appellant's understanding that, pursuant to the PTA, he was waiving the motion that may have provided him the identifying information, the judge failed to confirm Appellant's understanding that he was stipulating that the victim impact statements were made by victims of his offense. Moreover, the withholding of all identifying information from the victim impact statements left the military judge ignorant of the statements' relevance to determining an appropriate sentence for Appellant other than as general information about the impact on victims of child pornography possession. Thus, we find the military judge erred by admitting the victim impact statements attached to the stipulation of fact.

Nevertheless, we find that the victim impact statements attached to the stipulation of fact did not render the stipulation of fact itself unreasonable, that the PTA requirement for a "reasonable" stipulation of fact was satisfied, and that Appellant's guilty plea was provident. We so find because, as discussed further below, Appellant stipulated to the fact that the attached statements were made by victims of his offense and their family members. He did not stipulate to the assertions in the attached statements as facts. More importantly, the stipulation explicitly limited the purpose of attaching the statements to "determining an appropriate sentence for the Accused." The statements were not used by the military judge to accept Appellant's guilty plea or to find Appellant guilty. *Cf. Clark*, 53 M.J. at 282–83 (holding that the military judge erred by admitting a stipulation that included inadmissible evidence relating to polygraph testing, but the appellant suffered no prejudice because the judge did not rely on the evidence to accept the guilty plea). Thus, we resolve AOE II and III and conclude that, despite the erroneous admission of the victim impact statements attached to the stipulation of fact, the stipulation of fact itself was neither an unreasonable stipulation nor an unlawful condition of the PTA. There is no basis to question the providence of Appellant's guilty plea.

We also dispose of AOE VI and Appellant's claim that his trial defense counsel were ineffective insofar as they advised Appellant to enter into the stipulation of fact with the victim impact statements attached to it. The stipulation was not unreasonable. Appellant's trial defense counsel first moved for relief on the issue of the victim impact statements and then ensured Appellant's understanding that he was waiving the motion pursuant to the PTA. Appellant and his trial defense counsel negotiated the stipulation and the PTA, which provided Appellant the benefits of capping confinement, preserving the motion to suppress the evidence from the search and seizure of his computers, and litigating the charged distribution of child pornography, of which he was found not guilty.

### b. Not Unlawful Punishment

We next consider Appellant's contention that the victim impact statements attached to the stipulation of fact entitle him to credit for violation of Article 13, UCMJ, Article 55, UCMJ, and the Eighth Amendment (AOE V). Article 13, UCMJ, prohibits unlawful pretrial punishment while Article 55, UCMJ, and the Eighth Amendment prohibit cruel and unusual post-trial punishment. Appellant asserts that he was required to stipulate to the contents of the victim impact statements as facts and that being forced to admit he deserved, *inter alia*, to "get aids and die" constitutes unlawful and cruel and unusual punishment. We disagree.

Paragraph 16 of the stipulation of fact is clear: Appellant was stipulating to the fact that the statements attached to the stipulation were made by victims of his offense. Appellant was not required to stipulate to the *contents* of the victim impact statements as facts; he was not forced to admit that he deserved punishment not authorized by the UCMJ; and thus he was not subject to unlawful or cruel and unusual punishment, even if we assume that such an admission constitutes unlawful or cruel and unusual punishment.

### c. Sentence Appropriateness

Lastly, we look at the victim impact statements in the context of sentence appropriateness (AOE VII). This court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). While we have great discretion in determining whether a particular

sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 144–48 (C.A.A.F. 2010).

"A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a).

> [W]hen a [Court of Criminal Appeals (CCA)] reassesses a sentence because of prejudicial error, its task differs from that which it performs in the ordinary review of a case. . . . [N]ot only must the [CCA] assure that the sentence is appropriate in relation to the affirmed findings of guilty, but also it must assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed. . . .
>
> Thus, if the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a) will be met. Of course, even within this limit, the [CCA] will determine that a sentence it proposes to affirm will be "appropriate," as required by Article 66(c). . . .

*United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A. 1986) (citations omitted).

As explained above, we find that the military judge erred when she admitted the victim impact statements attached to the stipulation of fact and considered them, even if only to determine Appellant's sentence, not his guilt. While we still find the stipulation itself to be reasonable and the guilty plea provident, we account for the error by negating its effect, employing the remedy suggested by *Clark*, and "striking" the statements attached to the stipulation. *See Clark*, 53 M.J. at 283 (noting that if the PTA requirement for a "reasonable" stipulation of fact was interpreted to require appellant to stipulate to the polygraph evidence banned by Mil. R. Evid. 707, the "appropriate remedy" would be to "strike the reference to the polygraph from the stipulation[,]" which would not affect the providence of the plea).

The victim impact statements were attached to the stipulation of fact for the sole purpose of determining an appropriate sentence for Appellant. When there is error in the admission of sentencing evidence, including victim impact statements, we test for prejudice by assessing "whether the error substantially influenced the adjudged sentence" and consider four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Barker*, 77 M.J. at 384 (citations omitted).

This court tested for prejudice in *United States v. Machen*, No. 39295, 2018 CCA LEXIS 419 (A.F. Ct. Crim. App. 29 Aug. 2018) (unpub. op.). In *Machen*, the appellant pleaded guilty to receiving, possessing, and viewing child pornography. On appeal, the appellant claimed that the military judge abused his discretion when he admitted for sentencing three written unsworn victim impact statements offered by the Government. This court held that, in light of *Barker*, the judge abused his discretion by admitting the statements. This court went on to find that the Government's case was strong, the Defense's case was weak, and "the materiality of the statements was slight." *Machen*, unpub. op. at *13. The court found the last because the case was tried before a military judge presumed to know the law, the judge referenced the "settled law as to the lasting impacts of child pornography on its victims," and the judge stated he would limit his use of the statements to the recognized considerations. *Id.* at *12–13. Thus, this court concluded that the error did not result in prejudice to the appellant.

Comparing *Machen* to the case before us, we find similarly that the Government's case against Appellant was strong: Appellant pleaded guilty to possessing over 1,300 pictures and 300 videos of child pornography. The Defense's case was weak and consisted of character letters, awards and recognition from Appellant's four-plus years of military service, and his academic credentials.

Unlike in *Machen*, the materiality of the 37 pages of victim impact statements in Appellant's case was not slight. The record, particularly the STC's argument, makes clear that the Government was employing the statements as evidence in aggravation under R.C.M. 1001(b)(4), not as written unsworn statements under R.C.M. 1001A. Appellant was tried and sentenced by a military judge presumed to know the law, but the judge did not reference the "settled law" on the victim impact of child pornography and did not acknowledge the limited use of the victim impact statements of Attachment 2, even though she acknowledged the limited use of Mr. KP's testimony admitted as evidence in aggravation. Furthermore, the statements were numerous, but their quality was low in part because of the STC's refusal to provide identifying information, which prevented the sentencing authority from correlating the statements with the victims of Appellant's offense and rendered the statements nearly irrelevant to Appellant's case. More significantly, the quality of the statements was low because of the Government's failure to redact highly prejudicial and otherwise inadmissible content, such as the sentence recommendations for unlawful punishment, and the STC's use of such content in sentencing argument. As a result, we conclude the military judge's error of admitting and considering without limitation the victim impact statements of Attachment 2 substantially influenced the adjudged sentence and resulted in prejudice to Appellant.

With this conclusion of error and prejudice, we cannot affirm the adjudged and approved sentence in its entirety because we do not find it wholly correct in law and fact. Instead, we exercise our authority under Articles 59(a) and 66(c), UCMJ, to reassess the sentence.

We opt to reassess the sentence—not order a sentence rehearing—because the error that prejudiced Appellant had no impact on his sole conviction of the specification of child pornography possession. In addition, Appellant chose sentencing by a military judge alone, and this court has the experience and familiarity with Appellant's offense to determine reliably what sentence would have been imposed by the judge absent the error. *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013).

We have broad discretion when reassessing sentences. *Id*. at 12. Reassessing Appellant's sentence, we do not consider the victim impact statements attached to the stipulation of fact as their admission constituted prejudicial error. We do consider Appellant, the nature and seriousness of his offense of possessing more than 1,600 files of child pornography depicting the rape of children as young as four years old, Appellant's four-year record of service, and all matters contained in the record of trial. Appellant was sentenced to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to E-1. We reassess a sentence—purged of prejudicial error and appropriate for Appellant's offense—of a dishonorable discharge, confinement for 54 months, forfeiture of all pay and allowances, and reduction to E-1.

## C. Remaining Assignments of Error

Appellant also requests relief based on the improper admission of evidence in aggravation, specifically, Mr. KP's sentencing testimony regarding the "Blue Pillow" victim (AOE IV), and the conditions of post-trial confinement (AOE VIII). We decline to grant relief on either basis. First, we find the military judge did not abuse her discretion when she allowed as evidence in aggravation under R.C.M. 1001(b)(4) Mr. KP's testimony about the impact on the "Blue Pillow" victim. The victim was identified as a victim of Appellant's offense in that he possessed one image of her that was included in Attachment 1 to the stipulation of fact. Mr. KP testified about the financial and psychological impact resulting from the child pornography depicting the victim and thus relating to Appellant's offense.

Second, Appellant cites in his request for relief two particular conditions of confinement: allegedly dangerous work details and demeaning comments by confinement officials. We reviewed Appellant's claim and find it to be without merit, as "we are not a clearing house for post-trial confinement complaints . . . ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim.

App. 2017) (citation omitted), *rev. denied*, 77 M.J. 277 (C.A.A.F. 2018). These remaining issues neither require further discussion nor warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

**D. Timely Appellate Review**

We review de novo whether an appellant has been denied the due process right to a speedy post-trial review and appeal. A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before the court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). When a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and *Moreno*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135.

Appellant's case was originally docketed with the court on 6 April 2017. The delay in rendering this decision is presumptively unreasonable. However, we determine no violation of Appellant's right to due process and a speedy post-trial review and appeal.

Analyzing the *Barker* factors, we find the length of the delay—one week—is short. The reasons for the delay include the time required for Appellant to file his 80-page brief on 29 June 2018, the Government to file its 96-page answer on 8 August 2018, and Appellant to reply on 15 August 2018. The court is issuing its opinion within two months of Appellant's reply.

On 23 August 2018, Appellant asserted his right to speedy appellate review "so as to avoid serving additional unlawful confinement." Appellant began his five years of confinement on 10 January 2017. The court is reassessing a sentence that includes 54 months of confinement. We find no prejudice to Appellant resulting from the delay for the court to complete its review of his case. We also find the delay is not so egregious that it adversely affects the public's perception of the fairness and integrity of the military justice system. *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

We also determine that Appellant is not due relief even in the absence of a due process violation. *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). Applying the factors articulated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we find the delay in completing appellate review justified and relief for Appellant unwarranted.

### III. CONCLUSION

The approved findings and sentence *as reassessed* are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence as reassessed are **AFFIRMED**.[15]

HARDING, Senior Judge (concurring in the result):

I concur with my colleagues in their conclusion that the Government overreached in offering and the military judge erred in admitting the victim impact statements of Attachment 2 to the stipulation of fact and the result. I write separately for two reasons.

First, as stated in my dissent in *United States v. Hamilton*, 77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017), *rev. granted*, 77 M.J. 368 (C.A.A.F. 2018), I do not agree with the majority of this court that the Military Rules of Evidence do not apply to victim impact statements presented under R.C.M. 1001A.

Second, I write to emphasize that, while parties may expressly and voluntarily agree to stipulate to matters that would otherwise be inadmissible under the Military Rules of Evidence, the military judge retains the authority to "reject the stipulation in the interests of justice." *Clark*, 53 M.J. at 282 (citing *United States v. Glazier,* 26 M.J. 268, 270 (C.M.A. 1988)). In my view, the military judge, upon becoming aware of the victim impact statement containing the "humped to de[a]th by a horse and make them get aids and die" language, should have queried the trial counsel about it. Specifically, the military judge should have asked the trial counsel whether such language could ever be admissible, whether the military judge should consider such language in determining the sentence for Appellant, and how such language was consistent with maintaining the dignity and decorum required in a United

---

[15] The Department of Defense Form, *Confinement Order* (Mar. 2013), dated 10 January 2017, incorrectly lists Specification 2: Distribution of Child Pornography as an offense of which Appellant was found guilty. He was not. The form and any data entries made in reliance on it must be corrected, and we again remind Air Force personnel, whose responsibilities include post-trial processing, to exercise care in the execution of their duties.

States Air Force courtroom. In the interests of justice, the military judge should have emphatically rejected this language. The military judge did not. I do.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court